WESLEY SZE, SBN 306715
wsze@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301
Telephone: 650.849.5300

JASON W. MYATT (*pro hac vice* forthcoming)
jmyatt@gibsondunn.com
ANDREI F. MALIKOV (*pro hac vice* forthcoming)
amalikov@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: 212.351.4000

OLEH VRETSONA (*pro hac vice* forthcoming)
ovretsona@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, DC 20036
Telephone: 202.955.8500

*Attorneys for Plaintiff*
*Apple Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC.,<br><br>Plaintiff,<br><br>v.<br><br>VK LLC,<br><br>Defendant. | Case No. 5:26-cv-12159<br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Apple Inc. ("Apple"), by and through its undersigned counsel, brings this action against Defendant VK LLC ("VK") as set forth below:

**NATURE OF THE ACTION**

1. Apple brings this action to hold VK, one of Russia's largest technology companies, to its contractual obligations and to enjoin VK from pursuing a lawsuit that it filed against Apple in Russia, in breach of the parties' agreement to have any disputes litigated in this District.

2. VK is an app developer that built its apps through the Apple Developer Program and distributed them in Russia through Apple's App Store. Like every other developer, VK was required to execute the Apple Developer Program License Agreement ("DPLA") to access its developer account and participate in the App Store.

3. The DPLA is a binding contract with Apple that governs a developer's participation in the Apple Developer Program and the distribution of its apps on the App Store.

4. By entering into the DPLA, VK agreed to all of its terms, including a mandatory forum-selection clause, which requires "[a]ny litigation or other dispute resolution . . . arising out of or relating to [the DPLA], the Apple Software, or [VK's] relationship with Apple" to "take place in the Northern District of California."

5. VK initially accepted the DPLA on September 6, 2009, and subsequently re-affirmed its acceptance of the DPLA on at least 46 occasions, including most recently on June 18, 2026.

6. Yet, on August 18, 2026, VK filed a lawsuit against Apple and its affiliates, Apple Distribution International Ltd. ("ADI") and Apple Rus LLC ("Apple Rus"), in the Arbitrazh Court of the City of Moscow (the "Moscow Arbitrazh Court").

7. The claims that VK asserts in the Moscow Arbitrazh Court arise from the removal of three of VK's applications from the App Store in Russia and the suspension of VK's developer account on June 23, 2026. Apple took these actions due to sanctioned-party ownership and control concerns regarding VK and its parent entity, and Apple informed Elena Bagudina, the developer account holder for VK, about these actions on the same day.

8. Just a few weeks later, the Council of the European Union announced its decision to further sanction VK's parent entity, VK Company, and also Ms. Bagudina, citing their role in

"provid[ing] technical support for the repression of civil society and democratic opposition" in Russia.

9. Despite the legitimate reasons for Apple's actions, VK asserts in its Moscow lawsuit that Apple's removal of VK's applications in Russia and the suspension of its developer account were "unjustified" under Russian law and in breach of the DPLA.

10. VK's effort to press these claims against Apple in Moscow Arbitrazh Court in breach of the DPLA is both knowing and vexatious.

11. VK's Russian complaint expressly acknowledges the DPLA's forum-selection and choice-of-law provision, but asks the Moscow Arbitrazh Court to disregard them because a court in California will "apply U.S. sanctions—laws that conflict with the public policy of the Russian Federation." VK thereby seeks to hale Apple into a Russian court even though the parties agreed that disputes between them would be brought in this Court, and even though Apple has no formal corporate presence in Russia.

12. VK's Moscow litigation is also vexatious because, despite citing Apple's supposed "contractual obligations, owed to the Plaintiff" in the DPLA as the "grounds for filing the present lawsuit," VK has also sued ADI and Apple Rus—based on claims that are derivative of its claims against Apple and that arise solely out of the DPLA.

13. VK's breach has already caused Apple irreparable harm and leaves Apple exposed to further, imminent risks. VK seeks an order from a Russian judge to compel Apple to reinstate VK's access to Apple's platforms, to restore VK's applications in the App Store, and to restore the functionality of already-installed copies of VK's applications—all in violation of Apple's obligations to comply with sanctions law requirements. VK has also requested a draconian judicial penalty (an *astreinte*) of RUB 58,000,000 per day—approximately $700,000—accruing from the sixth day after judgment until Apple complies with any Russian order requiring specific performance, and VK has further applied for immediate enforcement of a judgment before Apple has a chance to appeal any such Russian court judgment. VK has also reserved the right to amend its Moscow claim to assert additional monetary damages from Apple and the other defendants.

14. VK has initiated the Russian proceedings—and threatens to initiate more—wrongfully. Accordingly, Apple seeks expedited equitable relief from this Court, including an order declaring that

the DPLA's forum-selection and choice-of-law provisions are valid and binding upon VK, that VK breached them by suing in Moscow, and that VK must litigate its claims in this District under California law, as well as preliminary and permanent injunctions barring VK from prosecuting its claims in any court other than a court located in the Northern District of California.

15. Federal law strongly favors enforcing forum-selection clauses. Having been targeted for complying with sanctions requirements and now facing the threat of being forced to defend Russian-law claims in a court in Russia—a country where Apple is not registered to do business, maintains no branch or representative office, and never agreed to litigate—Apple seeks this Court's protection by enforcing the parties' agreement about where VK's dispute should have been brought.

## THE PARTIES

16. Plaintiff is a California corporation with its principal place of business in Cupertino, California.

17. Defendant is a limited liability company organized under the laws of Russia with its principal place of business in Moscow, Russia. Plaintiff alleges, upon information and belief, that VK is a citizen of a foreign state because each of its members (and constituent members thereof) is a citizen of a foreign state.

## JURISDICTION

18. This Court has personal jurisdiction over VK because VK agreed to be subject to suit in this Court. VK agreed to Section 14.10 of the DPLA, which states in pertinent part:

> Any litigation or other dispute resolution between You and Apple (other than a challenge to a patent right before a patent office) arising out of or relating to this Agreement, the Apple Software, or Your relationship with Apple will ***take place in the Northern District of California, and You and Apple hereby consent to the personal jurisdiction of and exclusive venue in the state and federal courts within that District*** with respect any such litigation or dispute resolution. This Agreement will be governed by and construed in accordance with the laws of the United States and the State of California, except that body of California law concerning conflicts of law.

19. To the extent necessary, VK also has sufficient minimum contacts with California because VK—through its litigation in Russia—seeks to compel Apple, a citizen of California, to take action within California.

20. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1332(a)(2). The amount in controversy exceeds $75,000, exclusive of interest and costs. Apple is a citizen of California, while VK is a citizen of a foreign state.

## VENUE

21. Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. § 1391(b) and (c)(3) because VK is not resident in the United States and may therefore be sued in any judicial district.

22. Additionally, venue is proper in this District because the DPLA contains a mandatory forum-selection clause that states that all disputes "arising out of or relating to this Agreement, the Apple Software, or Your relationship with Apple will take place in the Northern District of California."

## DIVISIONAL ASSIGNMENT

23. Assignment to the San Jose Division is proper under Civil Local Rule 3-2(c) and (e) because a substantial part of the events or omissions giving rise to Apple's claims occurred in Santa Clara County, California. Apple maintains its headquarters and principal place of business in Santa Clara County, where it administers the Apple Developer Program and the App Store, where the employees responsible for App Store review policies and developer relations are based, and where the actions and events giving rise to the claims occurred.

## FACTUAL BACKGROUND

### A. VK Executes the DPLA and Agrees to Its Terms

24. VK is Russia's largest internet company. Its portfolio includes VKontakte, the social network often described as Russia's Facebook, with roughly 100 million monthly users; Odnoklassniki, another social network; VK Music; the Mail.ru email service; and a range of gaming, cloud, e-commerce, and communications products. VK also develops and operates Max, a widely used messaging application in Russia.

25. On or around September 6, 2009, VK enrolled in the Apple Developer Program and accepted the terms of the DPLA through a knowing and voluntary online process. As with all developers, VK was required to review the DPLA in an online portal and instructed to read it carefully before confirming its acceptance.

26. At all relevant times, the DPLA has contained a mandatory forum-selection and choice-of-law provision that states:

> Any litigation or other dispute resolution between You and Apple (other than a challenge to a patent right before a patent office) arising out of or relating to this Agreement, the Apple Software, or Your relationship with Apple will take place in the Northern District of California, and You and Apple hereby consent to the personal jurisdiction of and exclusive venue in the state and federal courts within that District with respect any such litigation or dispute resolution. This Agreement will be governed by and construed in accordance with the laws of the United States and the State of California, except that body of California law concerning conflicts of law.

27. Apple periodically revises the DPLA. When it does, a developer must accept the terms of the revised DPLA to remain in the Developer Program.

28. Since originally agreeing to the DPLA on September 6, 2009, VK has on 46 separate occasions re-accepted and re-affirmed its agreement to the DPLA, including most recently on June 18, 2026.

29. The mandatory forum-selection and choice-of-law provision quoted in paragraph 26 above appeared in each version of the DPLA that VK accepted, in substantially the form quoted above, designating this Court as the exclusive forum for any disputes between VK and Apple relating to the DPLA, the Apple Software, and VK's relationship with Apple, and selecting California substantive law to govern any such disputes.

30. VK further agreed that the provisions governing this dispute would survive the end of the parties' relationship. Section 11.3 of the DPLA provides that the forum-selection and governing law provisions "shall survive any termination of this Agreement."

31. At no point during the parties' relationship has VK ever objected to or requested modification to the mandatory forum-selection provision in the DPLA.

**B. Apple Removes VK's Apps and Suspends Its Developer Account Pursuant to the DPLA and in Compliance with Sanctions Law Requirements**

32. Beginning in 2014 and escalating sharply after Russia's full-scale invasion of Ukraine in February 2022, the United States, the European Union, and the United Kingdom imposed successive rounds of restrictive measures on Russian persons and entities. Those measures prohibit transacting with designated parties or with entities owned or controlled by designated parties.

33. Apple, like other multinational technology companies operating in these jurisdictions,

is bound by these sanctions laws and continuously assesses whether its business relationships comply with applicable sanctions regimes.

34. VK had contractually agreed to provide Apple with information relating to these compliance requirements, on request, so that Apple could confirm VK's compliance with the DPLA and applicable law. Section 3.1(b) provides: "You also agree to respond promptly to Apple's questions regarding information You have provided, including questions about Your identity so Apple can ascertain Your compliance with this Agreement, including Section 3.1 and Section 14.8. You acknowledge and agree that failure to do so may be grounds for disabling or terminating Your Program membership and access to Apple Software and Services."

35. The DPLA also specifies the kind of information Apple may request and VK must supply. In Section 14.8(B), VK represented and warranted that neither VK nor "any entity or person that directly or indirectly controls You, or is under common control with You" is "on any sanctions lists in the countries or regions available in App Store Connect."

36. Section 14.8 defines the term "control" to mean that "an entity or person possesses, directly or indirectly, the power to direct or cause the direction of the management policies of the other entity, whether through ownership of voting securities, an interest in registered capital, by contract, or otherwise." And Section 14.8 ties that representation back to VK's disclosure obligations: "When needed to ascertain Your compliance with this Section 14.8, You agree that Your obligations under Section 3.1 to provide information about Your identity include, for example, providing information upon request about corporate ownership including ultimate beneficial ownership, such as individuals with substantial control or 25% or greater ownership in You."

37. When Apple undertook another review of VK earlier this year for sanctions compliance purposes, it identified certain sanctioned-party ownership and control concerns relating to VK and its parent entity.

38. In light of these sanctioned-party ownership and control concerns, on June 23, 2026, Apple suspended VK's participation in the Developer Program and removed VK's applications from the App Store.

39. That same day, Apple notified VK about the suspension of its developer account by

email to Elena Bagudina, VK's designated account holder, using the email address that VK supplied to Apple to receive notices regarding the DPLA.

40. Just a few weeks after Apple took these actions, on July 13, 2026, the European Union formally issued sanctions against VK's parent, VK Company, and its sister entity, Communication Platform LLC, stating the company was "responsible for developing and managing the phone application Max App, under supervision by the FSB. The app comes pre-installed on all mobile devices sold in Russia and includes extensive surveillance features, later used for repressive actions against users criticizing Russia's war of aggression against Ukraine or posting other content banned by authorities." Because its parent is sanctioned, VK is itself effectively a blocked entity for sanctions purposes under EU regulations.

41. The European Union likewise issued sanctions against Ms. Bagudina because she is "responsible for the development and management of the Max application," and thereby "provides technical support for the repression of civil society and democratic opposition."

**C. VK Sues Apple in Moscow Arbitrazh Court, in Violation of Its Contractual Obligations Under the DPLA**

42. On August 18, 2026, VK filed a complaint against Apple, ADI, and Apple Rus in the Moscow Arbitrazh Court. By filing suit in the Moscow Arbitrazh Court, VK violated the mandatory forum-selection provision in the DPLA.

43. In its lawsuit, VK asks the Moscow Arbitrazh Court for an order declaring Apple's withdrawal from the DPLA invalid, requiring Apple to reinstate VK's access to Apple platforms, restoring VK's applications on Apple's App Store, restoring the functionality of already-installed copies of VK applications on Apple products, and imposing an *astreinte* of RUB 58,000,000 per day, accruing from the sixth day after judgment until Apple complies with any Russian order requiring specific performance. VK has further applied for immediate enforcement of a judgment before Apple has a chance to appeal any such Russian court judgment.

44. VK is aware of its obligations under Section 14.10 of the DPLA, but asks the Moscow Arbitrazh Court to disregard it on two grounds.

45. First, VK denies that it ever meaningfully agreed to the DPLA's terms, asserting at

Section 3.1.2 of its complaint that it signed the agreement "by way of adhesion," in a manner that did not allow it to influence the document's content, including the choice of competent court, and that it therefore had no opportunity to express its will regarding the referral of disputes to an American court. As alleged above, VK's assertion is not true. VK affirmatively accepted the DPLA on 47 separate occasions over more than 17 years, and never once objected to the forum-selection provision or asked to negotiate it.

46. Second, VK alleges in its Russian complaint that it cannot receive justice in a court in the Northern District of California. VK claims that the forum-selection clause is void and in any event incapable of performance because a United States court sitting where Apple is headquartered will "undoubtedly apply U.S. sanctions law—laws that conflict with the public policy of the Russian Federation and other overriding mandatory rules of Russian law."

47. VK does not allege that this Court lacks jurisdiction, that litigating here would be inconvenient, or that Apple procured VK's consent improperly. VK's objection is that this Court will apply United States law and that VK expects to lose if it does.

48. Apple has not yet been formally served with VK's Moscow complaint.

49. On September 3, 2026, the Moscow Arbitrazh Court, through Judge A.S. Chadov, accepted VK's complaint and formally initiated proceedings, docketing the matter as Case No. A40-250513/26-12-2188. The Moscow Arbitrazh Court has directed the defendants to file a response and scheduled a preliminary hearing for October 27, 2026, at 3:40 p.m.

50. The September 3, 2026 order further provides that, "if the parties to the case, duly notified of the time and place of the preliminary court hearing and the trial on the merits, fail to appear at the preliminary court hearing and do not file objections to the consideration of the case in their absence, the court will conclude the preliminary court hearing on October 27, 2026 and, *on the same day at 3:41 P.M.*, will consider the case on the merits in a hearing of the court of first instance, issuing a final judicial act."

**D. VK's Filing in Russia Follows a Playbook Deployed Against Google to Procure a Massive and Unlawful Russian Judgment**

51. VK's choice of forum follows a pattern set in a different Russian proceeding against

another American technology company. VK did not simply file in Russia. It filed in the same court, before the same judge, and through the same counsel that produced the template its complaint follows.

52. VK brought its action in the Moscow Arbitrazh Court. That is the same civil trial court that, in *NAO Tsargrad Media v. Google LLC*, No. A40-155367/2020, entertained claims against Google entities notwithstanding a clause in the Google terms requiring all disputes between the parties to be resolved in Santa Clara County, California. The Russian court rejected Google's reliance on that clause, reached the merits, and ordered Google to restore an account that Google had terminated in order to comply with United States sanctions. VK's case is assigned to Judge A.S. Chadov, who presided over that matter.

53. VK is represented in the Moscow proceeding by the Russian law firm Art de Lex, the same firm that represented the claimant in the *Tsargrad* proceeding. Art de Lex has represented other Russian parties in proceedings against Google entities that were filed in Russia in disregard of the forum the parties had agreed to, and has attempted to enforce the resulting Russian judgments against Google outside Russia.

54. The relief VK seeks in the Moscow Arbitrazh Court also follows the same design. As in *Tsargrad*, VK asks a Russian court to order an American company to undo a decision that company made to comply with sanctions law—here, to restore VK's developer access, reinstate VK's applications in the App Store, and restore the functionality of copies already installed on Apple devices. As in *Tsargrad*, VK also asks the Moscow court to compel that outcome through a daily penalty rather than damages: in *Tsargrad*, an *astreinte* beginning at 100,000 rubles per day and doubling every week without ceiling; here, an *astreinte* of RUB 58,000,000 per day accruing from the sixth day after judgment until Apple complies.

## <u>FIRST CAUSE OF ACTION</u>

### (Injunctive Relief—Breach of Mandatory Forum-Selection Clause)

55. Apple realleges and incorporates by reference each and every foregoing paragraph of this Complaint as if set forth in full.

56. VK agreed to be bound by the DPLA it entered into with Apple, and Apple performed its obligations under that contract.

57. Pursuant to Section 14.10 of the DPLA, VK and Apple agreed to litigate all disputes "arising out of or relating to [the DPLA], the Apple Software, or [VK's] relationship with Apple" within the Northern District of California and agreed that California substantive law would govern those disputes.

58. The claims that VK has asserted against Apple in its lawsuit in the Moscow Arbitrazh Court fall within the scope of the DPLA because the claims arise out of and relate to the DPLA, the Apple Software, and VK's relationship with Apple.

59. VK breached Section 14.10 of the DPLA by filing a lawsuit against Apple in the Moscow Arbitrazh Court, rather than in a court within the Northern District of California.

60. None of the enumerated exceptions to Section 14.10 apply here.

61. The parties to this action are functionally the same as the parties to the action VK filed in the Moscow Arbitrazh Court. Apple is the Plaintiff in this action and a respondent in the Moscow action, and VK is the Defendant in this action and the claimant in the Moscow action.

62. The issues in this action are the same as the issues in the Moscow action. Both actions arise out of and relate to the same DPLA and turn on the parties' rights and obligations under it, including whether VK is bound by the forum-selection and choice-of-law provisions of that agreement. This Court can resolve the claims VK has asserted, and threatens to assert, before the Moscow Arbitrazh Court, each of which arises out of and relates to the DPLA and is subject to Section 14.10.

63. Apple has been and continues to be deprived of the benefit of the forum for which it bargained, an injury that is not compensable in damages. That injury compounds with each step VK takes in the Moscow Arbitrazh Court.

64. As a direct and proximate consequence of VK's breach, there is now a lawsuit against Apple before the Moscow Arbitrazh Court that is causing damage to Apple, including but not limited to the attorneys' fees and costs Apple has incurred and continues to incur in defending a proceeding that VK had agreed to never bring in that court.

65. Should the Moscow Arbitrazh Court enter a judgment against Apple, Apple would also face the direct and proximate harm of being forced to choose between complying with a Russian judgment and violate sanctions requirements, or refusing to accept the Russian judgment and face

penalties under the Russian judgment.

66. VK may seek from the Moscow Arbitrazh Court *ex parte* an anti-anti-suit injunction under Article 248.2 of the Arbitrazh Procedure Code that purports to enjoin Apple from proceeding with this litigation in this Court. This Court should enjoin any attempt by VK to obtain from the Moscow Arbitrazh Court an anti-anti-suit injunction against proceeding with this action or any related action brought by Apple. The state and federal courts within the Northern District of California have exclusive jurisdiction under the DPLA to adjudicate the rights and responsibilities of Apple and VK under that agreement. Any request for an anti-anti-suit injunction by VK against Apple before the Moscow Arbitrazh Court would be a clear product of VK's punitive and extra-contractual efforts to compel Apple to take actions that are prohibited by sanctions requirements. Such forum shopping is designed to frustrate the federal policy favoring enforcement of forum-selection clauses and to be vexatious and oppressive to Apple.

67. VK's breach is ongoing, and on information and belief VK will extend it, including by amending its lawsuit or asserting additional claims for monetary damages.

68. Given VK's decision to retain the same counsel that engineered the campaign of vexatious and oppressive litigation against Google, including by securing an *ex parte* anti-suit injunction in a Russian court, the likelihood that VK will seek the same relief is significant and imminent. Each of those steps would arise out of and relate to the DPLA, and each would therefore fall within Section 14.10, where the parties consented to the exclusive jurisdiction in the Northern District of California. Proceeding in Moscow on either front would require Apple to defend in a forum it never accepted, would expose Apple to penalties for declining to take action that may cause it to violate sanctions laws, and would frustrate this forum's policy of holding parties to their contractual promises. Such litigation would be vexatious and oppressive. VK should accordingly be enjoined from seeking an anti-anti-suit injunction against this or any related action brought by Apple, in the Moscow Arbitrazh Court or in any other court outside the Northern District of California.

69. Accordingly, VK and all its officers, agents, servants, employees, and attorneys, and all those in active concert or participation with them, should be enjoined from commencing, prosecuting, continuing, or taking any steps in or otherwise participating in any proceedings arising out of or relating

to the DPLA in any jurisdiction other than state and federal courts within the Northern District of California.

70. Finally, the relief Apple seeks is narrow and its effect on international comity is tolerable. Apple asks this Court to act *in personam* against a single private party that voluntarily agreed to this forum, involving a single pending proceeding, and before any foreign judgment has been entered in that proceeding. Apple does not ask this Court to pass on the validity of any Russian judgment, to enjoin enforcement of any judgment anywhere, or to direct the Moscow Arbitrazh Court to take or refrain from taking any action.

**SECOND CAUSE OF ACTION**

**(Declaration Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202)**

71. Apple realleges and incorporates by reference each and every foregoing paragraph of this Complaint as if set forth in full.

72. VK agreed to be bound by the DPLA, which constitutes a valid and binding contract under California law.

73. Through the DPLA, VK and Apple agreed that disputes "arising out of or relating to this Agreement, the Apple Software, or Your [*i.e.*, VK's] relationship with Apple" would take place in accordance with the forum-selection clause contained in DPLA Section 14.10.

74. VK breached the DPLA by choosing to assert claims arising out of and/or relating to the DPLA in the Moscow Arbitrazh Court and not in this Court, as required by Section 14.10 of the DPLA.

75. There is an actual, justiciable, and substantial controversy between Apple and VK concerning their legal rights and obligations under the DPLA. A judicial determination is necessary and required at this stage to adjudicate the legal interests of the parties.

76. A declaratory judgment would clarify and settle the legal relations between the parties, finalize the controversy, and offer relief from the significant uncertainty and harm that currently exist as a result of VK's actions in connection with filing a suit before the Moscow Arbitrazh Court.

77. Given that VK has already filed a lawsuit against Apple in Russia, the substantial controversy between the parties regarding their contractual obligations under the DPLA and Section

14.10 thereof is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

78. Accordingly, Apple respectfully requests declarations to the effect that:

a. The forum-selection and choice-of-law clauses in the DPLA are valid and binding upon VK;

b. VK breached the DPLA by filing a lawsuit in Russia that asserts claims that arise out of and/or relate to the DPLA, the Apple Software, or its relationship with Apple; and

c. VK was required to resolve, and must resolve, any disputes arising out of and/or related to the DPLA, including any dispute regarding the removal of VK's applications from Apple's platforms, in the state and federal courts located in the Northern District of California under California law.

## PRAYER FOR RELIEF

WHEREFORE, Apple prays that the Court enter judgment in its favor and against VK and grant the following relief:

1. Declarations that:

a. The forum-selection and choice-of-law provisions in the DPLA are valid and binding upon VK,

b. VK breached the DPLA by bringing suit in Russia to compel the reinstatement of VK and its applications to Apple's online platforms in Russia, and

c. VK was, and is, required to resolve any disputes arising out of or relating to the DPLA, the Apple Software, or its relationship with Apple in the state and federal courts of the Northern District of California and under California governing law;

2. Preliminary and permanent injunctions enjoining VK, including its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, from commencing, prosecuting, continuing, or taking any steps in or otherwise participating in any proceedings arising out of or relating to the DPLA in any jurisdiction other than the state and federal courts within the Northern District of California, as is called for by the applicable forum-selection clause in the DPLA;

3. Preliminary and permanent injunctions enjoining VK from commencing, prosecuting, continuing, or taking any steps in or otherwise participating in any proceedings in Russia or any court that is not a court located in the Northern District of California that is intended to restrain or impede Apple's pursuit of this action, including applying to a Russian court for an anti-anti-suit injunction;

4. Preliminary and permanent injunctions extending the relief requested to any proceeding against Apple's affiliates, including ADI and Apple Rus, to the extent such proceedings arise out of or relate to the DPLA, the Apple Software, or VK's relationship with Apple;

5. Damages caused by VK's breach of the DPLA's forum-selection and choice-of-law provisions;

6. Attorneys' fees and costs; and

7. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial on all issues triable to a jury.

Dated: October 20, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Wesley Sze*
Wesley Sze
Jason W. Myatt*
Oleh Vretsona*
Andrei F. Malikov*

*Attorneys for Plaintiff Apple Inc.*

* *Pro hac vice forthcoming*