WESLEY SZE, SBN 306715
wsze@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301
Telephone: 650.849.5300

JASON W. MYATT (*pro hac vice* forthcoming)
jmyatt@gibsondunn.com
ANDREI F. MALIKOV (*pro hac vice* forthcoming)
amalikov@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: 212.351.4000

OLEH VRETSONA (*pro hac vice* forthcoming)
ovretsona@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, DC 20036
Telephone: 202.955.8500

*Attorneys for Plaintiff*
*Apple Inc.*

FILED

Oct 20 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

APPLE INC.,

Plaintiff,

v.

VK LLC,

Defendant.

Case No. 5:26-cv-12159

**PLAINTIFF APPLE INC.'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Pursuant to Federal Rule of Civil Procedure 65 and Civil Local Rules 7-10 and 65-1, Plaintiff Apple Inc. ("Apple") applies *ex parte* for a temporary restraining order and for issuance of an order to show cause why a preliminary injunction should not issue pending trial,

(a) enjoining Defendant VK LLC ("VK") from:

(i) taking any further steps in pursuit of the lawsuit filed by VK in the Arbitrazh Court of the City of Moscow ("Moscow Arbitrazh Court"), Case Number A40-250513/26-12-2188 (except as set forth in paragraph (b) below);

(ii) initiating, pursuing, or otherwise taking any steps with respect to any other ongoing or future proceedings that arise out of or relate to the Apple Developer Program License Agreement ("DPLA"), the Apple Software (as defined in the DPLA), or the parties' relationship, in any jurisdiction other than the state and federal courts within the Northern District of California, as required by Section 14.10 of the DPLA; and

(iii) initiating, pursuing, or otherwise taking any steps in any ongoing or future proceedings to enjoin or restrain Apple or its affiliates from continuing or pursuing this or any other action to enforce their rights; and

(b) directing VK to take all steps necessary to request and obtain from the Moscow Arbitrazh Court an immediate adjournment or stay of its lawsuit, Case Number A40-250513/26-12-2188, and to report to this Court the Moscow Arbitrazh Court's disposition of that request.

This relief is appropriate because VK entered into the DPLA and thereby agreed to bring any disputes arising out of or relating to the DPLA or VK's relationship with Apple in the courts of the Northern District of California; yet, VK sued Apple in Moscow in violation of the DPLA's mandatory forum-selection clause.

This Application satisfies the three-part test for issuance of an anti-suit injunction: (1) the parties and issues in this action and in the Russian case are sufficiently similar, such that this action will be dispositive of VK's claims in the Moscow Arbitrazh Court; (2) VK's pursuit of the Russian action, in breach of the DPLA, frustrates this forum's strong policy favoring enforcement of valid and binding forum-selection agreements; and (3) because VK's Russian lawsuit involves only private parties and concerns a contractual dispute, an anti-suit injunction directed at VK would have a tolerable

impact, if any, on comity. *See, e.g.*, *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990–94 (9th Cir. 2006); *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881–82 (9th Cir. 2012).

While Apple's application remains pending before this Court, a temporary restraining order, entered without notice to VK, is necessary to maintain the status quo. The Moscow Arbitrazh Court has entered an order scheduling a preliminary hearing for October 27, 2026, in which it notes the possibility that it may, under certain conditions, proceed directly to the merits of the case and enter a judgment against Apple and the other defendants in that action during that same hearing. Declaration of Wesley Sze, Ex. 4. Further, under Russian law, VK could apply for—and receive within 24 hours, without notice to Apple—an order restraining Apple from pursuing this action in this Court, on the mere basis that Apple filed this action in this Court to vindicate its contractual rights under the DPLA. Declaration of Konstantin Kroll ¶ 21. Apple therefore seeks issuance of a temporary restraining order, entered without notice to VK, for the reasons provided herein and in the accompanying certification of counsel, pending a hearing on Apple's application for a preliminary injunction.

This *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue against VK ("Application") is based on this Application, the accompanying Certification of Counsel Pursuant to Federal Rule of Civil Procedure 65(b)(1)(B) and Civil Local Rule 65-1(a)(5), the Memorandum of Points and Authorities in support, the Declarations of Wesley Sze, Carey Kozlowski, and Konstantin Kroll and all exhibits attached thereto, the Request for Judicial Notice, the pleadings and other records on file in this action, and any such further evidence and argument that may be submitted to the Court.

Dated: October 20, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Wesley Sze*
Wesley Sze
Jason W. Myatt*
Oleh Vretsona*
Andrei F. Malikov*

*Attorneys for Plaintiff Apple Inc.*

* *Pro hac vice* forthcoming

**DECLARATION OF COUNSEL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 65(b)(1)(B) AND CIVIL LOCAL RULE 65-1(a)(5)**

Apple has not attempted to provide notice to VK. In accordance with Federal Rule of Civil Procedure 65(b)(1)(B) and Civil Local Rule 65-1(a)(5), undersigned counsel certifies that notice should not be required because, upon receiving notice, VK is likely to move the Moscow Arbitrazh Court for an anti-anti-suit injunction to enjoin Apple from pursuing this action. Russian law permits VK, as a Russian company subject to foreign sanctions, to immediately seek from a Russian court on an *ex parte* basis an order enjoining all legal proceedings against VK outside of Russia, including this present action. Russian procedural rules require Russian courts to rule on such a request within one day of its receipt. Should the Moscow Arbitrazh Court issue an anti-anti-suit restraint, such an order would purport to block Apple from proceeding with enforcing its contractual rights in this forum and subject Apple to the threat of significant penalties for non-compliance. Indeed, in its complaint filed in the Moscow Arbitrazh Court, VK has already cited and relied upon this very type of Russian court order, including a Russian anti-suit restraint, that purported to bar a Google affiliate from pursuing litigation in this Court. Declaration of Konstantin Kroll ¶ 23. Notice to VK therefore risks depriving Apple of the opportunity to enforce the forum-selection clause that governs the subject matter of VK's claims and that vests exclusive jurisdiction over this dispute in this Court. Courts have dispensed with notice in similar circumstances in order to preserve the status quo pending a hearing on a preliminary injunction. *See Lockheed Martin Corp. v. Aceworld Holdings Pty Ltd.*, No. 19-4074-EJD, 2019 WL 3238946, at *2 (N.D. Cal. July 18, 2019) (granting anti-suit TRO without notice because notice "would allow them to seek ex parte relief in Australia"); *JPMorgan Chase Bank, N.A. v. VTB Bank, P.J.S.C.*, No. 24-2924, ECF No. 15, at 2–3 (S.D.N.Y. Apr. 18, 2024) (dispensing with notice because of the risk of a Russian anti-suit injunction).

Dated: October 20, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Wesley Sze*

Wesley Sze
Jason W. Myatt*
Oleh Vretsona*
Andrei F. Malikov*

*Attorneys for Plaintiff Apple Inc.*

* *Pro hac vice forthcoming*

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 3

A. The App Store and Developer Program License Agreement ........ 3

B. Apple Suspends VK's Developer Program Account Due to Sanctioned-Party Ownership and Control Concerns ........ 3

C. VK Files Its Lawsuit in Moscow, in Breach of the DPLA ........ 5

D. VK's Moscow Lawsuit Follows a Playbook Used Against Google, Which Resulted in a $20 Decillion Russian Fine ........ 6

III. LEGAL STANDARD ........ 7

IV. ARGUMENT ........ 8

A. Apple Is Entitled to an Anti-Suit Injunction ........ 9

B. Apple Seeks Appropriate and Targeted Anti-Suit Relief ........ 18

C. An *Ex Parte* Temporary Restraining Order Is Necessary to Preserve the Status Quo ........ 20

V. CONCLUSION ........ 24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009) .......... 22

*Applied Med. Distrib. Corp. v. Surgical Co. BV*, 587 F.3d 909 (9th Cir. 2009) .......... *passim*

*APT Sys., Inc. v. Apple Inc.*, No. 21-2121, 2022 WL 226812 (E.D. Pa. Jan. 26, 2022) .......... 14

*Bank of N.Y. Mellon v. TV Azteca, S.A.B. de C.V.*, No. 22-8164, 2025 WL 2710514 (S.D.N.Y. Sept. 22, 2025) .......... 16

*Bayerische Motoren Werke AG v. Zync Inc.*, No. 26-5274-CRB, 2026 WL 1788788 (N.D. Cal. June 22, 2026) .......... 19

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) .......... 13

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) .......... 10

*Coronavirus Rep. v. Apple Inc.*, 560 F. Supp. 3d 632 (D.N.H. 2021) .......... 14

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059 (9th Cir. 2007) .......... 20

*Dodocase VR, Inc. v. MerchSource, LLC*, No. 17-7088-EDL, 2018 WL 1475289 (N.D. Cal. Mar. 26, 2018) .......... 22, 24

*E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984 (9th Cir. 2006) .......... *passim*

*Gilbane Fed. v. United Infrastructure Projects FZCO*, No. 14-3254-VC, 2014 WL 4950011 (N.D. Cal. Sept. 24, 2014) .......... 11

*Google Ireland Ltd. v. OOO Google*, No. 25-851-EJD, 2025 WL 2772613 (N.D. Cal. Sept. 29, 2025) .......... 2, 22

*Google LLC v. NAO Tsargrad Media*, No. 24-5423-EJD, 2025 WL 964692 (N.D. Cal. Mar. 31, 2025) .......... *passim*

*H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, No. 11-742, 2012 WL 404895 (E.D. Wis. Feb. 7, 2012) .......... 15

*Huawei Techs., Co. v. Samsung Elecs. Co.*,
No. 16-2787-WHO, 2018 WL 1784065 (N.D. Cal. Apr. 13, 2018) ........ 13, 16

*InterDigital Tech. Corp. v. Pegatron Corp.*,
No. 15-2584-LHK, 2015 WL 3958257 (N.D. Cal. June 29, 2015) ........ 10, 11, 21, 24

*Jorgensen v. Cassiday*,
320 F.3d 906 (9th Cir. 2003) ........ 24

*JPMorgan Chase Bank, N.A. v. VTB Bank, P.J.S.C.*,
No. 24-2924, 2024 WL 1833606 (S.D.N.Y. Apr. 26, 2024) ........ 15, 21, 22, 23

*Laker Airways Ltd. v. Sabena, Belgian World Airlines*,
731 F.2d 909 (D.C. Cir. 1984) ........ 18, 20

*Lockheed Martin Corp. v. Aceworld Holdings Pty Ltd.*,
No. 19-4074-EJD, 2019 WL 3238946 (N.D. Cal. July 18, 2019) ........ 23

*Lockheed Martin Corp. v. Aceworld Holdings Pty Ltd.*,
No. 19-4074-EJD, 2019 WL 3767553 (N.D. Cal. Aug. 9, 2019) ........ 13, 16, 19

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) ........ 14

*Microsoft Corp. v. Motorola, Inc.*,
871 F. Supp. 2d 1089 (W.D. Wash. 2012) ........ 9, 11

*Microsoft Corp. v. Motorola, Inc.*,
696 F.3d 872 (9th Cir. 2012) ........ 8, 9, 13, 15

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ........ 22

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
369 F.3d 645 (2d Cir. 2004) ........ 11, 12

*Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*,
361 F.3d 11 (1st Cir. 2004) ........ 14

*Reno Air Racing Ass'n v. McCord*,
452 F.3d 1126 (9th Cir. 2006) ........ 23

*Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*,
652 F.2d 852 (9th Cir. 1981) ........ 7, 15, 23

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ........ 10

*Subramanian v. Aragen Life Scis. Priv. Ltd.*,
No. 25-9280-EJD, 2025 WL 3022903 (N.D. Cal. Oct. 29, 2025) ........ 8, 19

*Wilson v. Marchington*,
127 F.3d 805 (9th Cir. 1997) .......... 18

*Zynga, Inc. v. Vostu USA, Inc.*,
816 F. Supp. 2d 824 (N.D. Cal. 2011) .......... 11

**Rules**

Fed. R. Civ. P. 65(b)(1) .......... 8, 20

**Other Authorities**

Claire Mills, House of Commons Library,
*Sanctions Against Russia (February 2022 to January 2025)* (Jan. 21, 2025),
<https://commonslibrary.parliament.uk/research-briefings/cbp-9481/> .......... 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This case is about holding VK, a Russian app developer, to its contractual obligation to resolve its disputes with Apple in this Court. Since 2009, VK has maintained an Apple developer account and distributed its applications through the App Store. To create a developer account and participate in the App Store, VK was required first to execute and agree to the developer terms, including its mandatory forum-selection clause, which provides that disputes "arising out of or relating to this Agreement, the Apple Software, or [the developer's] relationship with Apple will take place in the Northern District of California." Declaration of Carey Kozlowski ("Kozlowski Decl."), Ex. C (Apple Developer Program License Agreement) ("DPLA") § 14.10. In June 2026, Apple suspended VK's developer account and VK's applications were removed from the App Store due to sanctioned-party ownership and control concerns regarding VK and its parent entity. A few weeks later, the European Union announced sanctions against VK's parent entity and Elena Bagudina, the person that VK designated as the holder of its developer account.

In response, VK filed a lawsuit against Apple and two other Apple entities in Moscow Arbitrazh Court in violation of the mandatory forum-selection clause in Section 14.10 of the DPLA. Through its Moscow lawsuit, VK seeks an order requiring Apple to reinstate VK's developer account and to restore its apps to the App Store. These claims—including those that VK asserts against the two other Apple entities named as defendants in Moscow—sound in contract and arise out of the DPLA. But VK's decision to embroil Apple in litigation in Moscow violates the plain terms of the DPLA, which dictate that VK's dispute must be brought in this Court.

The relief that Apple seeks here is what courts in this District have granted time and again: an anti-suit injunction barring VK from taking any further actions in breach of the DPLA. The Ninth Circuit has long held that such relief is appropriate and uniquely effective for enforcing forum-selection clauses. Each element for obtaining anti-suit relief under the Ninth Circuit's test in *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984 (9th Cir. 2006), is met: the parties and issues in both actions are sufficiently similar, forum policy and equitable considerations support enjoining VK from

continuing to violate its contractual commitments, and ordering a private party like VK to honor its own contractual commitments has a tolerable effect on comity.

Because Apple satisfies the Ninth Circuit's test for an anti-suit injunction, a temporary restraining order is also necessary and appropriate to preserve Apple's contractual forum while the Court considers a preliminary injunction. The exigency is especially compelling because Apple understands that the judge presiding over VK's Russian lawsuit has scheduled a preliminary hearing for October 27, 2026, noting in his order that the court could adjudicate the merits of VK's contractual claims one minute after the hearing starts and then issue a final and immediately enforceable merits judgment on the spot.

*Ex parte* relief is equally essential because providing VK with notice would undermine the relief that Apple seeks. Under the so-called "Lugovoy Law" that Russia enacted in response to foreign sanctions, as soon as VK learns of this action, VK could seek an anti-anti-suit injunction from the Moscow court prohibiting Apple from pursuing this action to vindicate its express contractual rights. VK could simultaneously request—without notice to Apple—an *ex parte* order restraining Apple from pursuing this action, and under Russian law the Moscow judge would be required to adjudicate such a request within one day. These risks are not hypothetical. VK is represented by the same counsel that secured massive judgments against Google on behalf of Russian parties. Its lawsuit against Apple has been filed in the same court in Moscow and has been assigned to Judge Chadov, who presided over the Russian proceedings against Google. And in one of those Russian proceedings, when Google obtained a temporary restraining order from this Court and served it upon the Russian counterparty, the very next day its counsel (from the same law firm that now represents VK) "asked a Russian court for anti-suit injunctions"—which was promptly granted. *Google Ireland Ltd. v. OOO Google*, No. 25-851-EJD, 2025 WL 2772613, at *2 (N.D. Cal. Sept. 29, 2025). Giving notice to VK would therefore undermine the very relief that Apple seeks from this Court and render Apple vulnerable to punishment by a Russian court for simply seeking to vindicate its contractual rights in this forum—which is where the dispute belongs in the first place.

For all these reasons, and as discussed further below, Apple respectfully asks the Court to enter an *ex parte* temporary restraining order barring VK from continuing to advance its lawsuit in Moscow

in violation of the forum-selection clause in the DPLA, and to issue an order to show cause why a preliminary injunction should not issue.

## II. FACTUAL BACKGROUND

### A. The App Store and Developer Program License Agreement

Apple is a California corporation headquartered in Cupertino. Kozlowski Decl. ¶¶ 3–4. Apple requires any developer wishing to distribute apps through the App Store to agree to the Developer Program License Agreement. *Id.* ¶ 6. The DPLA governs the relationship between a developer and Apple, including the developer's participation in the App Store. *Id.* & DPLA § 14.11.

As relevant here, the DPLA contains a binding forum-selection clause requiring that disputes relating to the DPLA, Apple's software (including the App Store), or the developer's relationship with Apple be brought exclusively in the Northern District of California:

> Any litigation or other dispute resolution between You and Apple (other than a challenge to a patent right before a patent office) arising out of or relating to this Agreement, the Apple Software, or Your relationship with Apple will take place in the Northern District of California, and You and Apple hereby consent to the personal jurisdiction of and exclusive venue in the state and federal courts within that District with respect [to, *sic*] any such litigation or dispute resolution. This Agreement will be governed by and construed in accordance with the laws of the United States and the State of California, except that body of California law concerning conflicts of law.

DPLA § 14.10.

Developers accept the DPLA through a knowing and voluntary online process. Kozlowski Decl. ¶ 7. They are required to review the agreement in an online portal and are instructed—in bolded, capitalized text—to read it before confirming their agreement. *Id.* The DPLA also expressly notifies developers that it is a binding "legal agreement between You and Apple." *Id.* & DPLA at p. 1. Apple periodically updates the DPLA, and developers must review and accept revised versions to continue distributing apps on the App Store. *Id.* ¶ 9.

### B. Apple Suspends VK's Developer Program Account Due to Sanctioned-Party Ownership and Control Concerns

Defendant VK is a Moscow-based technology company. Declaration of Wesley Sze ("Sze Decl."), Ex. 1 ("VK Compl.") at p. 1; Kozlowski Decl. ¶ 13. VK's apps include "VK" (a prominent social media app), "Odnoklassniki" (another social media app), and "VK Music" (an audio streaming app). VK Compl. at p. 2.

VK enrolled in the Apple Developer Program in 2009 and first accepted the terms of the DPLA on September 6, 2009. Kozlowski Decl. ¶¶ 11, 16 & Ex. A. Since then, VK has accepted the DPLA 46 times—at least once every year from 2009 through 2026, and at least three times a year from 2024 through 2026—and most recently on June 18, 2026. *See id.*, Ex. A. Each acceptance was made through the process described above. *Id.* ¶ 20. Each version of the DPLA that VK accepted included a materially similar mandatory forum-selection provision designating any disputes to be brought in the state and federal courts within the Northern District of California. *Id.* ¶ 21.

Beginning in 2014 and escalating sharply after Russia's full-scale invasion of Ukraine in February 2022, the United States, the European Union, the United Kingdom, and other jurisdictions imposed successive rounds of restrictive measures on Russian persons and entities. *See, e.g.*, Claire Mills, House of Commons Library, *Sanctions Against Russia (February 2022 to January 2025)* (Jan. 21, 2025), <https://commonslibrary.parliament.uk/research-briefings/cbp-9481/>. Those measures prohibit transacting with designated parties, as well as with entities owned or controlled by designated parties. Like other multinational technology companies, Apple is bound by these laws and continuously assesses whether its business relationships comply with them.

Earlier this year, when Apple undertook a review for sanctions compliance purposes, it identified certain sanctioned-party ownership and control concerns relating to VK and its parent entity. Kozlowski Decl. ¶ 24. In light of these sanctioned-party ownership and control concerns, on June 23, 2026, Apple suspended VK's participation in the Developer Program and VK's applications, including VK, Odnoklassniki, and VK Music, were removed from the App Store. *Id.* That same day, Apple notified VK about the suspension of its developer account by email to Elena Bagudina, the account holder for VK's developer account. *Id.* ¶ 25.

Three weeks after Apple suspended VK's account, on July 13, 2026, the European Union formally announced sanctions against VK's parent entity (VK Company) and Ms. Bagudina. The Council of the European Union determined that VK's parent entity and Ms. Bagudina were "responsible for the development and management" of a state-supported app under "supervis[ion]" of Russia's Federal Security Service (FSB), which includes "extensive surveillance features" that had been used for "repressive actions" against users who "criticiz[ed] Russia's war of aggression against

Ukraine, or other content banned by the authorities." Sze Decl., Ex. 6 at pp. 3, 17 (Council of the EU, Council Implementing Regulation (EU) 2026/1708 (July 13, 2026), <www.eur-lex.europa.eu/eli/reg_impl/2026/1708/oj/eng>) (Annex, entry 88 (listing Bagudina) and Part B (listing VK Company)).

**C. VK Files Its Lawsuit in Moscow, in Breach of the DPLA**

On August 18, 2026, VK filed a lawsuit against Apple in the Moscow Arbitrazh Court, in violation of the mandatory forum-selection clause in Section 14.10 of the DPLA. VK Compl. at 1. VK's lawsuit contends that Apple breached its contractual obligations under the DPLA by suspending VK's developer account and removing its apps from the App Store in Russia. VK Compl. at pp. 2–3; *id.* §§ 6.1–6.3. VK seeks an order declaring Apple's unilateral withdrawal from the DPLA "invalid," and "compel[ling]" Apple to reinstate VK's developer account and to restore VK's apps to the App Store (VK Compl., Prayer ¶¶ 1–4)—even though the DPLA provides no basis for that relief and compliance with such an order would cause Apple to violate sanctions laws.

VK's Moscow lawsuit also names as defendants two separate entities, Apple Distribution International Ltd. ("ADI") and Apple Rus LLC ("Apple Rus"). VK Compl. at p. 1. VK's claims, insofar as asserted against ADI and Apple Rus, are derivative of the claims against Apple and similarly arise out of the DPLA. *See id.* § 1 & Prayer ¶¶ 1–4. In particular, VK alleges the DPLA was terminated by Apple as well as ADI and Apple Rus, and on that basis seeks an order declaring ADI and Apple Rus jointly responsible for Apple's alleged breach of the DPLA, and also compelling ADI and Apple Rus to reinstate VK's developer account and restore VK's apps "under the terms of the [DPLA]." *Id.*, Prayer ¶¶ 1–4. Furthermore, in the event of non-compliance with any such order, VK asks the Moscow Arbitrazh Court to hold all three entities jointly and severally liable for the resulting penalty (also known as an "*astreinte*"). *Id.* § 6.3 & Prayer ¶ 6.

In its complaint, VK also acknowledges its contractual forum obligations under Section 14.10 of the DPLA, but asks the Moscow Arbitrazh Court to disregard it on two grounds. First, VK contends that it entered into the agreement "by way of adhesion," in "a manner that did not allow [it] to influence the content of the document being signed, including the choice of the competent court," and that it therefore "had no opportunity to express its intent regarding the submission of disputes to a U.S. court." VK Compl. § 3.1.2. However, as explained above and set forth in greater detail in the Declaration of

Carey Kozlowski, VK affirmatively accepted the DPLA on 47 separate occasions over 17 years—including just days before the suspension—and VK has never once objected to the mandatory forum-selection clause or sought to revise it. Kozlowski Decl. ¶ 18 & Ex. A.

Second, VK alleges that the Moscow Arbitrazh Court should not enforce Section 14.10 because VK cannot receive justice in an American court. According to VK, the mandatory forum-selection clause requiring that disputes be brought in the Northern District of California is void and incapable of performance because—in VK's words—"a U.S. state court, located where Apple Corporation's headquarters are situated, would undoubtedly apply U.S. sanctions law—laws that conflict with the public policy of the Russian Federation and other overriding mandatory rules of Russian law." VK Compl. § 3.1.1. In other words, VK seeks a Russian forum precisely to avoid a U.S. court applying U.S. law in assessing whether Apple's actions were lawful and permitted under the DPLA, even though that is exactly what the DPLA requires and what VK agreed to when it accepted the DPLA.

On September 3, 2026, Judge A.S. Chadov of the Moscow Arbitrazh Court accepted VK's complaint and formally initiated the lawsuit, docketing the matter as Case No. A40-250513/26-12-2188. *See* Sze Decl., Ex. 4. Judge Chadov ordered the defendants to file a response to the complaint and scheduled a preliminary hearing in Moscow for October 27, 2026, at 3:40 p.m. *Id.* at p. 1. His order further states that, if the defendants have been duly notified and fail to appear without objecting to the case being heard in their absence, "the court will conclude the preliminary court hearing on October 27, 2026 and, ***on the same day at 3:41 PM, will consider the case on the merits in a hearing of the court of first instance, issuing a final judicial act.***" *Id.* at p. 2 (emphasis added). The Moscow Arbitrazh Court has thereby announced that it may enter final judgment against Apple, ADI, and Apple Rus minutes after the preliminary hearing begins on October 27, 2026.

### D. VK's Moscow Lawsuit Follows a Playbook Used Against Google, Which Resulted in a $20 Decillion Russian Fine

The risk that the Moscow Arbitrazh Court will disregard the DPLA's forum-selection clause, reach the merits under Russian law, and enter a judgment against Apple is not speculative. VK's litigation strategy follows the pattern of a case that NAO Tsargrad Media (a Russian media company owned by a sanctioned Russian businessman) brought against Google in 2020 after Google terminated

Tsargrad's YouTube channels to comply with sanctions laws. *See NAO Tsargrad Media v. Google LLC*, No. A40-155367/2020 (Moscow Arbitrazh Ct.); *see also Google LLC v. NAO Tsargrad Media*, No. 24-5423-EJD, 2025 WL 964692, at *1–2 (N.D. Cal. Mar. 31, 2025). VK's lawsuit against Apple is pending in the same court, before the same judge, and asserts materially similar claims. *Compare* VK Compl. §§ 1, 6.1–6.3 & Prayer ¶¶ 1–6, *with* Declaration of Konstantin Kroll ("Kroll Decl.") ¶ 17. VK is also represented in the Moscow Arbitrazh Court proceedings by Art De Lex, the same law firm that represented Tsargrad (and other Russian plaintiffs) in Russian proceedings against Google and its related entities. Sze Decl., Ex. 3; *see Google LLC v. NAO Tsargrad Media*, No. 24-5423-EJD, ECF No. 4-1 ¶ 7 (N.D. Cal. Aug. 19, 2024).

The risk is especially acute because in the *Tsargrad* litigation, Judge Chadov disregarded the forum-selection clause in Google's Terms of Service, which required all disputes between Tsargrad and Google to be resolved in Santa Clara County, California, and permitted Tsargrad to press its claims against Google, eventually reaching the merits and ordering Google to restore Tsargrad's accounts—even though doing so would have forced Google to violate sanctions laws. *Tsargrad*, 2025 WL 964692, at *1, *11; Kroll Decl. ¶ 17. In that order, Judge Chadov also imposed compounding daily penalties (*astreinte*) that, together with similar penalties in related Russian cases, eventually exceeded 20 decillion U.S. dollars, an astronomical amount that is orders of magnitude greater than the entire global GDP. *Tsargrad*, 2025 WL 964692, at *2.

The relief VK seeks against Apple follows the same design, and VK has sued in Moscow for the express purpose of obtaining what no court applying U.S. law would ever issue: an order compelling Apple to violate sanctions laws. VK Compl. §§ 4, 6.3 & Prayer ¶¶ 1–6. Apple has filed this action to protect its rights.

## III. LEGAL STANDARD

This Court may issue an anti-suit injunction "to restrain a party subject to its jurisdiction from proceeding in a foreign court in circumstances that are unjust." *Gallo*, 446 F.3d at 989; *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981). Because the "suitability of an anti-suit injunction involves different considerations from the suitability of other preliminary injunctions," the movant seeking an anti-suit injunction "need not meet [the] usual test of a likelihood

of success on the merits of the underlying claim to obtain an anti-suit injunction." *Gallo*, 446 F.3d at 990–91. "Rather, [the movant] need only demonstrate that the factors specific to an anti-suit injunction weigh in favor of granting the injunction." *Id.* at 991.

To that end, the Ninth Circuit has adopted a "three-part inquiry for assessing" whether an anti-suit injunction should issue. *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir. 2012). *First*, the court should "determine 'whether or not the parties and the issues are the same' in both the domestic and foreign actions, 'and whether or not the first action is dispositive of the action to be enjoined.'" *Id.* (quoting *Gallo*, 446 F.3d at 991). *Second*, the court determines whether "at least one" of the *Unterweser* factors—"a *disjunctive* list of considerations that . . . [ask whether] the foreign litigation would '(1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's *in rem* or *quasi in rem* jurisdiction; or (4) . . . prejudice other equitable considerations'"—applies. *Id.* *Third*, the court considers "whether the injunction's impact on comity is tolerable." *Id.* at 881–82.

The standard for issuing a TRO is the same as for a preliminary injunction, so a TRO request that seeks anti-suit injunctive relief is also evaluated under *Gallo*. *Subramanian v. Aragen Life Scis. Priv. Ltd.*, No. 25-9280-EJD, 2025 WL 3022903, at *2 (N.D. Cal. Oct. 29, 2025); *see also Gallo*, 446 F.3d at 990–91 ("To the extent the traditional preliminary injunction test is appropriate, . . . we only need address whether [the party seeking an anti-suit injunction] showed a significant likelihood of success on the merits" of whether "the factors specific to an anti-suit injunction weigh in favor of granting [it].").

Finally, "[t]o secure a temporary restraining order without notice, the moving party must also show 'specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition'; and 'the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.'" *Subramanian*, 2025 WL 3022903, at *2 (quoting Fed. R. Civ. P. 65(b)(1)).

## IV. ARGUMENT

An anti-suit injunction is appropriate where, as here, a party's foreign litigation actions "frustrate[] this court's ability to adjudicate issues properly before it" or when, without "an anti-suit

injunction, the integrity of the action before this court will be lessened." *Microsoft Corp. v. Motorola, Inc.*, 871 F. Supp. 2d 1089, 1100 (W.D. Wash. 2012), *aff'd*, 696 F.3d 872 (9th Cir. 2012). Each of the requirements for issuance of an anti-suit injunction under *Gallo* is satisfied, the scope of the requested injunction is appropriately tailored to protecting Apple's contractual rights under the DPLA, and Apple has shown that issuance of an *ex parte* temporary restraining order is warranted in these circumstances.

## A. Apple Is Entitled to an Anti-Suit Injunction

All three elements of the Ninth Circuit's *Gallo* test for issuance of an anti-suit injunction are met. *First*, the issues and parties in both actions are substantially similar. VK's Moscow complaint alleges breaches of the DPLA and seeks contractual remedies against Apple, all of which fall within the DPLA's forum-selection clause and can be resolved in this action. *Second*, even though only one *Unterweser* factor is necessary, multiple factors are present here because VK's Moscow litigation frustrates this forum's policy of upholding forum-selection clauses, is vexatious and oppressive, and prejudices other equitable considerations. *Third*, restraining VK's pursuit of its claims in Russia and requiring it to litigate those claims here—in the forum it agreed to—has a tolerable effect on comity.

### ***1. The Parties and Issues in Both Actions Are Substantially Similar.***

The first prong of *Gallo* is satisfied here because the issues and parties are substantially similar in the foreign and domestic actions, such that this action is "dispositive of the action to be enjoined." *Microsoft*, 696 F.3d at 881.

**Substantially Similar Issues.** "[T]he crux of the functional inquiry in the first step of the analysis is to determine whether the issues are the same in the sense that all the issues in the foreign action fall under the forum selection clause and can be resolved in the local action." *Applied Med. Distrib. Corp. v. Surgical Co. BV*, 587 F.3d 909, 915 (9th Cir. 2009). To satisfy this element, the issues need not be "precisely and verbally identical." *Id.* Rather, "the issues are meaningfully 'the same'" so long as the domestic action "is capable of disposing of all the issues in the foreign action and all the issues in the foreign action fall under the forum selection clause." *Id.* Thus, courts have found an "identity of issues" present where a forum-selection clause encompasses all disputes arising from the contract, and the foreign action asserts claims relating to that same contract. *See, e.g.*, *id.* at 916 (similarity of issues where "all of the claims in the [foreign] action arise out of the Agreement, are

subject to the forum selection clause, and therefore must be disposed of in the California forum if at all"); *InterDigital Tech. Corp. v. Pegatron Corp.*, No. 15-2584-LHK, 2015 WL 3958257, at *5 (N.D. Cal. June 29, 2015) (sufficient similarity of issues where foreign action "ar[ose] solely because of the parties' obligations pursuant to" their contract).

Here, the forum-selection clause in the DPLA provides, in relevant part, that "[a]ny litigation . . . arising out of or relating to this Agreement, the Apple Software, or Your relationship with Apple will take place in the Northern District of California." DPLA § 14.10. This language—"arising out of or relating to"—is "broad and far reaching." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000). It "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).[1]

There can be no reasonable dispute that VK's Russian lawsuit asserts claims that fall under Section 14.10's broad umbrella. As set forth in its Russian complaint, VK's stated "grounds for filing the present lawsuit" are "the Defendants' unlawful unilateral refusal to perform contractual obligations, owed to the Plaintiff." VK Compl. at p. 3. Each of VK's three asserted "[l]egal grounds" is wholly contractual too: that "[t]he Defendants have unjustifiably refused to perform their obligations under the [DPLA] in breach of their obligations thereunder," that "[a]n unjustified unilateral refusal to perform the [DPLA] is null and void," and that "[t]he Defendants' refusal to perform the [DPLA] on grounds related to sanctions, is invalid." VK Compl. §§ 6.1–6.3. So is the relief VK seeks: a declaration that the "unilateral withdrawal . . . from the performance of the [DPLA]" was "invalid," and an order compelling Apple "to restore" VK's developer account and apps "under the terms of the

[1] Section 14.10 includes exceptions for disputes involving particular parties. *See* DPLA §§ 1.2, 14.10(a)–(d). The claims that VK asserts against Apple, ADI, and Apple Rus in Russia do not fall into any of these exceptions. VK is not a U.S. government entity, U.S. public and accredited educational institution, or international, intergovernmental organization. *See id.* § 14.10(a)–(c). And because VK alleges no claims or injury related to apps "delivered to, or intended for delivery to, end users through the App Store in [the European Union]," or to apps "insofar as used, or intended for use, . . . by end users located in the EU," its claims (at least as pleaded) also do not relate to any "European Relationship" and are therefore not governed by subsection (d) either. *Compare* DPLA §§ 1.2, 14.10(d) (defining European Relationship Claims that are subject to "exclusive jurisdiction of the courts of Ireland"), *with* VK Compl. §§ 3.3–3.4 & 6.3 (alleging breach of contract "in the Russian segment of the App Store"; claiming injury in Russia and "other countries" and enumerating 38 such nations—all non-EU states).

[DPLA]" (i.e., specific performance). VK Compl., Prayer ¶¶ 1–4. Accordingly, "[b]ecause all of [VK]'s claims . . . as a practical matter depend on termination of the Agreement, they all 'aris[e] out of th[e] Agreement' and are subject to the forum selection clause." *Applied Med.*, 587 F.3d at 914. And because "all of [VK's Russian] claims fall under the contract's forum selection clause and can be litigated and resolved in the California action," the "claims in the two actions are functionally the same and the first action is dispositive of the action to be enjoined." *Id.*[2] Enforcing Section 14.10 would thus simply confirm that VK may not pursue these claims in Moscow—without impinging on VK's ability to sue in this Court, the agreed-to forum. *See, e.g.*, *Gallo*, 446 F.3d at 991 (rejecting argument that "enjoining [foreign] action would deprive [party] of its right to pursue its claims").

**<u>Substantially Similar Parties</u>.** The parties in both actions are "substantially similar" as well. "Perfect identity of parties is not required for an anti-suit injunction." *Gilbane Fed. v. United Infrastructure Projects FZCO*, No. 14-3254-VC, 2014 WL 4950011, at *3 (N.D. Cal. Sept. 24, 2014) (cleaned up). Rather, "it suffices that the parties be affiliated in such a way that their interests coincide." *Microsoft*, 871 F. Supp. 2d at 1098.

Apple and VK are undeniably parties to both actions. VK's joinder of two other entities—ADI and Apple Rus—as defendants in Moscow does not alter the *Gallo* analysis. The Ninth Circuit has cited with approval the Second Circuit's approach of treating parties as "sufficiently similar" if the claims asserted "against the [plaintiff's affiliate in the foreign action] . . . rest chiefly (if not completely) on its affiliation with" the plaintiff. *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004); *see Applied Med.*, 587 F.3d at 915 (adopting Second Circuit test). Courts have therefore found sufficient similarity between parties even where the foreign action may include additional parties or affiliates. *See, e.g.*, *Microsoft*, 871 F. Supp. 2d at 1098 (granting anti-suit injunction where the parties were Microsoft and its affiliates on one side, and Motorola and its affiliates on the other side); *Zynga, Inc. v. Vostu USA, Inc.*, 816 F. Supp. 2d 824, 828

[2] To the extent VK may argue its claims arise under Russian statutory law, that does not alter the identity of issues. After all, "[i]t is not clear that [VK] even has claims under [Russian] law, because the contract contains a choice-of-law clause in favor of" California; but at the end of the day, the mere invocation of foreign substantive law does not defeat this element of the *Gallo* test. *InterDigital*, 2015 WL 3958257, at *6 (holding that "same claims" element of *Gallo* test was satisfied even though the foreign plaintiff brought claims under Taiwanese law in a Taiwan court, despite the parties' agreement specifying that disputes would be brought in California under Delaware law).

(N.D. Cal. 2011) (applying same test and finding that this element was met despite additional parties named in foreign lawsuit).

VK's "[j]ustification for the joinder" of ADI and Apple Rus in the Russian lawsuit underscores the similarity of parties under VK's own stated theory. *See* VK Compl. § 1. After recognizing that the DPLA "was entered into with Apple Inc." (*see id.*) and citing this as grounds for suing Apple, VK contends that it may also sue ADI as "commissionaire for the marketing and End-User download" of VK's applications in Russia. *Id.*; DPLA, Sch. 1, Ex. A ¶ 2 & Sch. 2, Ex. A ¶ 2. Thus, VK's express contractual rationale for naming ADI as a defendant—namely, the role assigned to ADI under the DPLA—emphasizes that VK itself alleges sufficient similarity as between Apple and ADI. As for Apple Rus, VK characterizes it as the purported "de facto representative office of [Apple], as it is wholly controlled by Apple Inc." and claims it "effectively carries out Apple Inc.'s operations within [Russia]." VK Compl. § 1(3). Again, while Apple disputes VK's characterization, VK's alleged theory for suing Apple Rus in Moscow demonstrates that those claims are contingent on its claims against Apple under the DPLA, and "thus rest chiefly (if not completely) on its affiliation with [Apple Inc.]." *Paramedics*, 369 F.3d at 652.

In sum, because every claim VK asserts in Moscow arises from the DPLA and can be resolved in this action, and the parties to both actions are substantially similar, this action is dispositive of the Russian action. The first element of the *Gallo* test is satisfied.

**2. *VK's Vexatious and Oppressive Lawsuit Frustrates This Forum's Policy in Favor of Enforcing Contractual Forum-Selection Clauses and Is Inequitable.***

The second element of the *Gallo* test is also met here. Even though the presence of just a single *Unterweser* factor suffices to satisfy *Gallo*, 446 F.3d at 990, multiple *Unterweser* factors apply and support granting anti-suit injunctive relief in favor of Apple.

a. VK's Suit Frustrates This Forum's Policy Favoring the Enforcement of Forum Agreements.

A touchstone of the Ninth Circuit's anti-suit injunction test is whether the foreign litigation threatens to "frustrate a policy of the forum issuing the injunction." *Applied Med.*, 587 F.3d at 913 (quotation marks omitted). Here, VK's litigation in Russia in violation of the forum-selection clause "frustrates" the longstanding policy of U.S. courts to "encourag[e] enforcement of forum selection

clauses." *Gallo*, 446 F.3d at 991, 993; *see also Lockheed Martin Corp. v. Aceworld Holdings Pty Ltd.*, No. 19-4074-EJD, 2019 WL 3767553, at *4 (N.D. Cal. Aug. 9, 2019) ("There is a strong policy favoring robust forum selection clauses.") (internal quotation marks omitted). Indeed, "[p]rotecting contractual devices that provide such indispensable, essential functions within international trade justifies the imposition of an anti-suit injunction," without which a "forum selection clause effectively becomes a nullity." *Gallo*, 446 F.3d at 991–93; *see also Applied Med.*, 587 F.3d at 918–19.

By entering into the DPLA, Apple and VK agreed to be bound by a "clause establishing *ex ante* the forum for dispute resolution" with "the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources." *Lockheed*, 2019 WL 3767553, at *4 (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94 (1991)). Commencing a foreign action in breach of the parties' contractual choice of forum—as VK did here—and "[a]ny continuation of the . . . action"—as VK will do here absent an injunction—therefore "denigrates the integrity of the parties' prior written commitment that disputes concerning the Agreement would be litigated in California." *Applied Med.*, 587 F.3d at 919.

b. VK's Russian Action Is Vexatious and Oppressive.

The second *Unterweser* factor also applies because VK's Russian action is vexatious and oppressive. "Vexatious" means "without reasonable or probable cause or excuse; harassing; annoying." *Microsoft*, 696 F.3d at 886 (internal quotation marks omitted). Conduct that "may well be vexatious and oppressive" includes "continuation of foreign proceedings . . . in violation of the forum selection clause." *Gallo*, 446 F.3d at 993. This is especially true where the "location of the foreign action raise[s] concerns of forum shopping." *Huawei Techs., Co. v. Samsung Elecs. Co.*, No. 16-2787-WHO, 2018 WL 1784065, at *10 (N.D. Cal. Apr. 13, 2018) (citing *Microsoft*, 696 F.3d at 886; quotation marks and alteration omitted).

VK's Russian litigation bears all of these hallmarks. VK's own complaint acknowledges "the inclusion of a prorogation clause in the [DPLA]—designating the courts of the Northern District of California (Paragraph 14.10 of the [DPLA])." VK Compl. § 3.1.1. That is an admission that VK knows about its contractual obligations. VK's knowing disregard of this provision—coupled with its assertion

that "this dispute falls within the jurisdiction of [Russia's Arbitrazh] courts," *id.*—demonstrates that its Russian suit is calculated to be vexatious and oppressive to Apple.

VK's attempt to circumvent Section 14.10 by claiming it is "void" and "unenforceable" does not make its Russian lawsuit any less vexatious or oppressive. A forum-selection clause is "prima facie valid and should be enforced" absent a "clear[] show[ing] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972). VK offers nothing to satisfy this "heavy burden of proof," *id.* at 17, as to a provision that courts have deemed "valid and enforceable." *Coronavirus Rep. v. Apple Inc.*, 560 F. Supp. 3d 632, 639 (D.N.H. 2021) (enforcing Section 14.10 of the DPLA as a "valid contract containing an enforceable forum selection clause"); *APT Sys., Inc. v. Apple Inc.,* No. 21-2121, 2022 WL 226812, at *12 (E.D. Pa. Jan. 26, 2022) (transferring developer's action under DPLA because "there is a valid forum selection clause at issue"). VK's complaint also invokes "norms of Russian law" and Russian case law, VK Compl. § 4, but neither has any bearing because the parties agreed that the DPLA is governed by California substantive law. DPLA § 14.10. "[T]he binding contractual language providing for California law and a California forum controls in the first instance, [foreign] law notwithstanding." *Applied Med.*, 587 F.3d at 917 (rejecting party's reliance on Belgian law and remanding for district court to enjoin party's pursuit of Belgian suit filed in breach of forum-selection clause).

Further, VK admits that it decided to sue in Russia to forum shop. According to VK, Section 14.10's "invalidity" "stems from the fact that a U.S. state court, located where Apple Corporation's headquarters are situated, would undoubtedly apply U.S. sanctions law—laws that conflict with the public policy of the Russian Federation and other overriding mandatory rules of Russian law." VK Compl. § 3.1.1. Citing what it calls "a patently unlawful ruling" issued by this Court "to support another U.S. Big Tech entity, [Google]," *id.*, VK chose to sue in Russia precisely to avoid the agreed-to law that a court in this agreed-to forum would apply. "Where, as here, a party institutes a foreign action in a blatant attempt to evade the rightful authority of the forum court, the need for an anti-suit injunction crests." *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 20 (1st Cir. 2004).

VK's joinder of two corporate affiliates of Apple as defendants in Moscow further demonstrates that VK's litigation lacks reasonable cause and is intended to harass by escalating the pressure: should Apple be unable to comply with a reinstatement order, VK asks the Moscow Arbitrazh Court to make its judgment immediately enforceable, impose fixed daily penalties (*astreinte*) (RUB 58 million, or approximately $700,000), and impose joint and several liability on all three defendants. VK Compl., Prayer ¶¶ 2–6; Kroll Decl. ¶¶ 5, 28.

Finally, VK's demand for an order directing restoration of its developer account and apps is also vexatious and oppressive because it seeks to put Apple in an untenable position of facing a Russian court order it cannot lawfully obey and penalties it cannot avoid. VK filed its Russian complaint with this request for relief more than a month after the Council of the European Union announced sanctions against VK's parent (and by extension VK) and its developer account holder, Ms. Bagudina, on July 13, 2026. *See* Sze Decl., Ex. 6; *see also* VK Compl. at n.4. VK's evident intent to subject Apple and its co-defendants "to conflicting orders" is further proof that "the [Russian] lawsuit is clearly vexatious and oppressive," *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, No. 11-742, 2012 WL 404895, at *3 (E.D. Wis. Feb. 7, 2012) (enjoining foreign litigation filed in violation of forum-selection clause that would subject company to "conflicting orders"), *aff'd*, 694 F.3d 827 (7th Cir. 2012), and further reason to restrain the Moscow action, *see JPMorgan Chase Bank, N.A. v. VTB Bank, P.J.S.C.*, No. 24-2924, 2024 WL 1833606, at *1–2 (S.D.N.Y. Apr. 26, 2024) (enjoining Russian proceedings and recognizing the public interest in protecting companies that comply with sanctions obligations from foreign punishment); *see generally Microsoft*, 696 F.3d at 886 (foreign litigation was "vexatious or oppressive" where it "compromis[ed] the court's ability to reach a just result . . . free of external pressure on" party that sought injunction).

c. Concurrent Proceedings Prejudice Apple's Contractual Rights and Waste Judicial Resources.

Other equitable considerations favor enjoining VK's Russian lawsuit, including because the lawsuit (1) "is likely to result in . . . substantial inconvenience and unnecessary expense," and (2) "could result in inconsistent rulings or even a race to judgment." *Seattle Totems*, 652 F.2d at 855–56.

First, absent an anti-suit injunction, VK's Russian lawsuit will continue to cause Apple substantial inconvenience and unnecessary expense. Forum-selection clauses are strongly favored because "they enhance certainty, allow parties to choose the regulation of their contract, and enable transaction costs to be reflected accurately." *Lockheed*, 2019 WL 3767553, at *4 (citation omitted). Parties use forum-selection clauses in contracts, "particularly in the international setting[,] precisely in order to avoid [the] costs and inconvenience" of having "to hire [foreign] counsel, litigate in two different countries, and coordinate with two different sets of opposing counsel." *Bank of N.Y. Mellon v. TV Azteca, S.A.B. de C.V.*, No. 22-8164, 2025 WL 2710514, at *14 (S.D.N.Y. Sept. 22, 2025) (internal quotations and citations omitted). VK's breaches of the forum-selection clause in the DPLA have, nevertheless, forced Apple to incur these exact "costs and inconvenience[s]" and should therefore be enjoined.

Second, VK has created a significant and urgent risk of inconsistent judgments. Its complaint expressly asks the Russian court to disregard the DPLA's forum-selection and choice-of-law terms, to hold non-signatories to the DPLA liable for purported contractual breaches, and to compel Apple to take actions that contravene its obligations to comply with sanctions laws. And VK filed its lawsuit in the same court (the Moscow Arbitrazh Court), before the same judge (Judge A.S. Chadov), and represented by the same counsel (Art De Lex), as the parties who obtained Russian judgments against Google in the *Tsargrad* litigation. This Court found that at least one such judgment was "the culmination of an effort to frustrate the U.S. courts' jurisdiction in clear violation of U.S. public policy" by "Russian courts [that] sought to delegitimize the U.S. court system by holding that the U.S. courts were not a fair forum." *Tsargrad*, 2025 WL 964692, at *7. VK should be enjoined before it can extract from the same Russian court further "judgments won on the basis of actions taken to undermine [this Court's] lawful authority." *Id.* And because a preliminary hearing has been scheduled for October 27, 2026, VK's litigation in Moscow has created a "race to judgment"—an additional factor favoring issuance of an anti-suit injunction before that date. *See Huawei*, 2018 WL 1784065, at *10 ("risk of inconsistent judgments" favored granting anti-suit injunction, without which "Samsung face[d] the risk of significant harm . . . with impacts percolating around the world").

### *3. An Anti-Suit Injunction Against VK Would Have a Tolerable Effect on Comity.*

The last prong of the *Gallo* inquiry—whether "the impact on comity would be tolerable," *Gallo*, 446 F.3d at 994—is satisfied as well. "[W]here there is no public international issue raised, a foreign government is not involved in the litigation, and the litigation involves private parties concerning disputes arising out of a contract, not only would an anti-suit injunction not have an intolerable impact on comity, but allowing foreign suits to proceed in such circumstances would seriously *harm* international comity." *Applied Med.*, 587 F.3d at 921 (internal quotation marks omitted).

The same circumstances compel the same conclusion here. Apple seeks a targeted anti-suit injunction against a private party to stop its breach of the DPLA by litigating a contractual dispute in the wrong forum. The injunction would operate on VK, not the Moscow court. *Gallo*, 446 F.3d at 989 (an anti-suit injunction "operates *in personam*: the American court enjoins the claimant, not the foreign court"). By accepting the DPLA, VK consented to this Court's jurisdiction and committed to bring any dispute arising out of or relating to the DPLA and its relationship with Apple in this forum. Apple merely seeks an order compelling VK to abide by its commitment. Because the "case before [the Court] deals with enforcing a contract and giving effect to substantive rights," "this in no way breaches norms of comity." *Gallo*, 446 F.3d at 994.

That VK "filed first . . . makes no difference as to the propriety of an anti-suit injunction." *Gallo*, 446 F.3d at 994. In *Gallo*, the defendant sued first in Ecuador; then, "after becoming apprised of the Ecuadorian litigation," the plaintiff sued in California. *Id.* The Ninth Circuit explained that "where private parties have previously agreed to litigate their disputes in a certain forum, one party's filing first in a different forum would not implicate comity at all." *Id.* Likewise, VK's "filing first" in a different, improper forum than the one in which VK and Apple agreed to bring their disputes is immaterial. *Id.* (explaining that, otherwise, "any party seeking to evade the enforcement of an otherwise-valid forum selection clause need only rush to another forum and file suit," contrary to "United States policy" and with "serious deleterious effects for international comity").

Nor does VK's reliance on Russia's "public policy," "overriding mandatory rules of Russian law," and classification of Western sanctions against Russian actors as "unfriendly actions" raise any material—let alone intolerable—comity concerns. VK Compl. §§ 3.1.1, 4, 6.3. Comity "is [not] a

matter of absolute obligation," but "of grace grounded in principles of reciprocity and cooperation." *Tsargrad*, 2025 WL 964692, at *6 (alteration in original) (internal quotation marks omitted). The Russian public policy and law that VK invokes in its Moscow complaint, however, are antithetical to principles of reciprocity or cooperation by design. Comity need not be extended to a court that deems a California forum-selection clause invalid simply because courts in that forum supposedly "would undoubtedly apply U.S. sanctions law" in interpreting a contract governed by U.S. law. *See* VK Compl. § 3.1.1; *see also Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 938 (D.C. Cir. 1984) (declining to extend comity to efforts "specifically intended to interfere with and terminate" the court's jurisdiction). VK has asked the Russian court to order Apple to restore VK's access and applications, knowing that doing so would require Apple to violate its sanctions compliance obligations. Given that Apple is an American company, extending comity in this case would be "contrary [and] prejudicial" to national interests. *Tsargrad*, 2025 WL 964692, at *6 (citing *Wilson v. Marchington*, 127 F.3d 805, 809 (9th Cir. 1997)).

**B. Apple Seeks Appropriate and Targeted Anti-Suit Relief**

Because the three *Gallo* factors are satisfied, the remaining question concerns the proper scope of the injunction. Apple seeks an order (a) enjoining VK from (i) taking any further steps to pursue its Russian lawsuit, except as necessary to request a stay or adjournment; (ii) initiating, pursuing, or otherwise taking any steps with respect to any contemplated or future proceedings that arise out of or relate to the DPLA, the Apple Software (as defined in the DPLA), or VK's relationship with Apple, in any forum other than as expressly provided in Section 14.10 of the DPLA; and (iii) initiating, pursuing, or otherwise taking any steps in any ongoing or future proceeding to enjoin or restrain Apple or its affiliates from continuing and/or pursuing this or any other action to enforce their rights; and (b) directing VK to take all steps necessary to request and obtain from the Moscow Arbitrazh Court an immediate adjournment or stay of that action and to report to this Court that court's disposition of the request.

Subparts (a)(i) and (b) are narrowly targeted to stop VK's ongoing breaches of the DPLA, and consistent with the relief issued by this Court in similar cases. *See, e.g.*, *Tsargrad*, 2025 WL 964692, at *15 (ordering that Tsargrad "shall move to adjourn or stay all pending Enforcement Proceedings"

and "shall not otherwise participate in any way in any Enforcement Proceeding"); *Subramanian*, 2025 WL 3022903, at *3 (granting *ex parte* TRO and temporarily enjoining defendant "from maintaining the India action"); *Bayerische Motoren Werke AG v. Zync Inc.*, No. 26-5274-CRB, 2026 WL 1788788, at *5 (N.D. Cal. June 22, 2026) (granting injunction and ordering that "Zync must request a stay of the ITC proceedings"). Requiring VK to take an affirmative action is appropriate where, as here, that action is necessary to prevent further breaches of the DPLA's forum-selection clause. *See, e.g.*, *Tsargrad*, 2025 WL 964692, at *15; *Bayerische Motoren Werke*, 2026 WL 1788788, at *5.

Subpart (a)(ii) is likewise narrowly tailored. It prevents VK only from taking any action to pursue claims arising out of or related to the DPLA or VK's relationship with Apple in a forum other than what Section 14.10 of the DPLA prescribes—in other words, to stop VK from further breaching the DPLA. This prospective relief is appropriate because it "merely enforces the forum-selection clause and will not deprive [VK] of legal recourse." *Lockheed*, 2019 WL 3767553, at *4 (approving anti-suit order prospectively enjoining defendants from suing in Australia because a defendant with no desire to sue is "not impacted," and one that wishes to sue is "bound by [its] own agreement to do so in the United States").

Finally, subpart (a)(iii)—an order prohibiting VK from seeking an anti-anti-suit injunction from the Moscow court or otherwise taking steps to enjoin or restrain Apple from continuing this action—is warranted for the same reason that similar relief was granted by this Court in *Tsargrad*. 2025 WL 964692, at *14 ("find[ing] that, under the *Gallo* test, it is appropriate to enjoin Tsargrad from seeking an anti-suit injunction against this lawsuit"). VK's complaint cites other Russian court orders that "expressly prohibited the continuation" of proceedings brought in this District to enforce a forum-selection clause—a signal that VK is already contemplating a similar tactic here. VK Compl. § 3.1.1 (citing orders in Google Russia bankruptcy and related proceedings).

Russian court practice confirms VK could seek such a restraint imminently. Under Russian procedural law, applications for such interim orders may be filed without notice and must be considered within one day from filing. The Moscow Arbitrazh Court has granted such relief, including at the request of VK's Russian counsel, on that timetable in other matters to enjoin U.S. proceedings. Kroll Decl. ¶¶ 17–21. That procedure—combined with VK's reference to prior restraints that Russian courts

have imposed against U.S. proceedings—makes a Russian-court order purporting to enjoin this action a live risk that would frustrate the DPLA and this forum's policy by exposing Apple to penalties for doing nothing more than enforcing its contractual rights. And comity does not require deference to a foreign proceeding, "the practical effect of" which is "to interfere with the domestic forum's ability to adjudicate the dispute." *See Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1067–68 (9th Cir. 2007) (U.K. court anti-suit injunction barring plaintiff from pursuing first-filed U.S. lawsuit, obtained by defendant in later-filed U.K. action without notice to plaintiff, not entitled to comity); *see also Laker Airways*, 731 F.2d at 927–30 (recognizing U.S. courts' authority to protect their own proceedings against foreign attempts to terminate them).

In sum, each subpart of Apple's proposed injunction is appropriately targeted at VK's conduct and extends no further than necessary to preserve this Court's ability to adjudicate the parties' dispute in the forum they chose.

### C. An *Ex Parte* Temporary Restraining Order Is Necessary to Preserve the Status Quo

This Court should also issue an *ex parte* TRO to protect Apple from imminent irreparable harm—and to protect this Court's jurisdiction—until VK can be heard and the Court can rule on Apple's request for a preliminary injunction. Rule 65(b)(1) permits the Court to enter a TRO without notice where a movant demonstrates that "immediate and irreparable injury . . . will result . . . before the adverse party can be heard in opposition." Both conditions are met here.

#### *1. Apple Faces Immediate and Irreparable Injury.*

There is a real and substantial risk of immediate and irreparable injury. For one thing, the Moscow Arbitrazh Court has scheduled a preliminary hearing in seven days—on October 27, 2026—and Judge Chadov has left open the possibility that the court may proceed immediately to the merits and enter a judgment that day. Sze Decl., Ex. 4 at p. 2. Absent a TRO, VK will retain its unfettered ability to continue taking actions that violate the DPLA and interfere with this Court's jurisdiction. A TRO preserves this Court's ability to decide the threshold forum issue before the Moscow litigation defeats the protection Apple seeks here.

Furthermore, because VK has already filed suit in Russia, Apple is suffering irreparable harm because it has been denied its contractually agreed choice of forum, which itself justifies immediate

relief. *See, e.g.*, *Tsargrad*, 2025 WL 964692, at *11 (finding irreparable harm from denial of the bargained-for forum); *InterDigital*, 2015 WL 3958257, at *9 (same); *JPMorgan*, 2024 WL 1833606, at *1 (same).

Time is also of the essence because unless VK is first enjoined by this Court, Apple faces an immediate risk of being placed in an untenable situation before its application for preliminary injunctive relief can be heard. Specifically, in June 2020, Russia enacted the "Lugovoy Law," which supplemented the Russian Arbitrazh Procedural Code with two provisions, Articles 248.1 and 248.2, granting Russian courts so-called "exclusive" jurisdiction over disputes involving sanctioned persons regardless of any contractual forum-selection provisions. These amendments also permit sanctioned parties to obtain from Russian courts injunctions prohibiting others from "initiating or continuing" proceedings against them in a foreign court. Russian judges routinely grant these injunctions and, in the interim, issue temporary restraints prohibiting the same actions under Articles 90–97 of the Arbitrazh Procedural Code on an expedited basis, often within one day of filing, and without any notice to the counterparty or hearing. Kroll Decl. ¶¶ 20–23. Although VK does not expressly rely on Article 248.1 or 248.2 in its Russian complaint—reportedly a growing trend among sanctioned parties hoping to position themselves to enforce Russian judgments in other countries, *id.* ¶¶ 24–28—its complaint is nonetheless replete with citations to the Russian state policy against, and statutes enacted to counteract, global sanctions against Russian parties. VK also relies on numerous Russian court decisions applying Articles 248.1 and/or 248.2, *see, e.g.*, VK Compl. § 3.5, and the only court decisions attached to its complaint are of this ilk, *id.*, App. 12–13 (attaching U.S. and Russian court rulings in proceedings involving Google and Russian sanctioned parties that sued Google in Russia under Articles 248.1 & 248.2). Moreover, obtaining such injunctive relief from a Russian court under Article 248.1 and/or 248.2, and under Articles 90–97 pending issuance of the injunction, is part of an established playbook that VK's Russian counsel has used before: VK's counsel obtained such orders from the Moscow Arbitrazh Court to prohibit Google from continuing proceedings in this District. *See Google Ireland*, 2025 WL 2772613, at *2.

Thus, the moment that VK learns about this action, it could apply for—and within one day obtain—an order from the Moscow Arbitrazh Court that purports to bar Apple from participating in

this proceeding—all before this Court has an opportunity to act. Any such restraint—an anti-anti-suit order, in effect—against Apple would inflict irreparable harm. For one thing, it would force Apple to choose between forfeiting its contractually agreed forum or violating a Russian court order. Moreover, if VK obtains an anti-anti-suit injunction from the Moscow Arbitrazh Court first, that order would be the first ruling by any court on where this dispute may be heard—and VK could present that order to any future enforcement court as one that Apple chose to defy, recasting Apple's pursuit of its contractual forum in this action as contempt of an existing decree, rather than enforcement of a bargained-for right. In such a scenario, compensatory damages would hardly be an adequate remedy, particularly if VK and its counsel follow the Google playbook through "a punitive campaign" of "enforcement efforts." *Tsargrad*, 2025 WL 964692, at *13. The threat therefore warrants relief before Apple is forced into that choice. *Cf. Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 380–81 (1992) (equitable relief available against threatened enforcement); *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1057–58 (9th Cir. 2009) (finding likely irreparable harm where motor carriers had to accept challenged requirements or lose access to their business).[3]

### 2. *Notice Would Be Fatal to the Relief Apple Seeks Through This Action.*

Granting Apple's request for a TRO on an *ex parte* basis is also appropriate because notice would invite the very harm the anti-suit injunction is meant to prevent. The Ninth Circuit has recognized that *ex parte* relief is appropriate when "notice to the defendant would render fruitless the

---

[3] This Application satisfies the *Gallo* test, and as this Court has recognized, "[i]f an anti-suit injunction passes th[e *Gallo* test], it need not also satisfy the *Winter* factors"—*i.e.*, the traditional four-factor test for preliminary injunctions. *Tsargrad*, 2025 WL 964692, at *2. But even if the *Winter* factors did apply, each supports granting Apple's application. *First*, because VK has asserted contract claims against Apple in Russia in clear breach of the DPLA's forum-selection clause—a valid and binding provision that VK agreed to, which has been enforced by U.S. courts, *see supra* p. 14—Apple is likely to succeed on its breach of contract claim. *See Dodocase VR, Inc. v. MerchSource, LLC*, No. 17-7088-EDL, 2018 WL 1475289, at *9 (N.D. Cal. Mar. 26, 2018) (likelihood of proving breach of forum-selection clause established), *aff'd*, 767 F. App'x 930 (Fed. Cir. 2019). *Second*, the loss of the benefit of the forum-selection clause contracted for by Apple constitutes irreparable harm. *Supra* p. 21. *Third*, the inequity of Apple's loss of its contractual choice of forum decidedly outweighs any claim that enjoining VK's participation in its wrongful Russian action would "cause hardship" to VK. *Dodocase*, 2018 WL 1475289, at *12 (rejecting "argu[ment] that the enforcement of the contract into which it freely entered would cause hardship"). *Fourth*, the public interest supports enforcing forum-selection clauses and protecting Apple from being punished for complying with sanctions laws. *See JPMorgan*, 2024 WL 1833606, at *2.

further prosecution of the action." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (internal quotation marks omitted). This is one such case. As explained above, once VK learns of this action, Russia's Lugovoy Law gives VK a mechanism to obtain its own anti-anti-suit order from the Moscow Arbitrazh Court to prohibit Apple from proceeding in this Court. *See supra* pp. 21–22. Given even just one day's warning, VK could obtain an order purporting to prohibit Apple from continuing this action in this Court—thereby defeating the very reason why Apple filed this action, and exposing Apple to the harms that an anti-suit injunction issued by this Court is intended to prevent. Notice would therefore not merely risk the "race to judgment" that *Seattle Totems* warns against, 652 F.2d at 856, but it could force Apple to forfeit the protection it seeks before this Court could even consider it.

Courts have dispensed with notice in these circumstances. In *Lockheed*, this Court granted a TRO without notice, pending a hearing on why a preliminary anti-suit injunction should not issue, because notice "would allow [the defendants] to seek ex parte relief in Australia." *Lockheed Martin Corp. v. Aceworld Holdings Pty Ltd.,* No. 19-4074-EJD, 2019 WL 3238946, at *2, *4–5 (N.D. Cal. July 18, 2019). Likewise, when a U.S. bank filed suit seeking an anti-suit injunction against a Russian sanctioned bank in federal court in New York and, in the interim, an *ex parte* TRO to prevent the Russian bank from seeking its own anti-anti-suit injunction in Russian court, that court granted the TRO without notice. *See JPMorgan*, 2024 WL 1833606, at *1, *3 (noting that the *ex parte* TRO "issued on April 18, 2024" was served on VTB Bank "as of April 19, 2024"). This case presents the same exigency, and advance notice to VK regarding the TRO would defeat the very purpose Apple needs this relief now.

### *3. No Bond Is Warranted.*

No bond should be required for either the requested TRO or preliminary injunction. A court may require no security where there is "no realistic likelihood of harm" to the defendant from the injunction. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). That is precisely the case here. The relief Apple seeks would not deprive VK of any substantive claim; it would merely require VK to litigate those claims in the forum that the parties consented to by contract. In such circumstances, courts routinely grant injunctions requiring no security. *See, e.g.*, *Tsargrad*, 2025 WL 964692, at *14

(no bond required to enjoin enforcement of Russian judgment secured in breach of forum-selection clause and pursuit of anti-suit relief in Russian court); *InterDigital*, 2015 WL 3958257, at *11 (no bond required for anti-suit injunction because there is no "harm" or "damages" sustained even if the injunction "was later reversed"); *Dodocase*, 2018 WL 1475289, at *14 (ordering withdrawal of an administrative patent suit without requiring any bond).

## V. CONCLUSION

Apple respectfully requests that the Court enter a temporary restraining order (a) enjoining VK from (i) taking any further steps in pursuit of the action it filed in the Moscow Arbitrazh Court, Case Number A40-250513/26-12-2188, in breach of the parties' contractual mandatory forum-selection clause (except as set forth in paragraph (b) below), (ii) initiating, pursuing, or otherwise taking any steps with respect to any other ongoing or future proceedings, arising out of and/or related to the DPLA, the Apple Software (as defined in the DPLA), or the parties' relationship, in any jurisdiction other than the state and federal courts within this District, as required by Section 14.10 of the DPLA, and (iii) initiating, pursuing, or otherwise taking any steps in any ongoing or future proceedings to enjoin or restrain Apple or its affiliates from continuing or pursuing this or any other action to enforce their rights; and (b) directing VK to take all steps necessary to request and obtain from the Moscow Arbitrazh Court an immediate adjournment or stay of its lawsuit, Case Number A40-250513/26-12-2188, and to report to this Court the Moscow Arbitrazh Court's disposition of that request. Apple also requests an order to show cause why a preliminary injunction should not issue and asks that the Court dispense with security.

Dated: October 20, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Wesley Sze*
Wesley Sze
Jason W. Myatt*
Oleh Vretsona*
Andrei F. Malikov*

*Attorneys for Plaintiff Apple Inc.*

* *Pro hac vice forthcoming*